LeRoy WHITFIELD, Plaintiff-Appellant,

v.

ILLINOIS BOARD OF LAW EXAMINERS et al., Defendants,

Len Young Smith, Defendant-Appellee.

No. 73–2085.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1974.

Decided Oct. 18, 1974.

LeRoy Whitfield, pro se.

William J. Scott, Atty. Gen., and Herbert L. Caplan, Asst. Atty. Gen., Chicago, Ill., for defendant-appellee.

Before PELL and STEVENS, Circuit Judges, and LARAMORE *, Senior Judge.

* Senior Judge Don N. Laramore of the United States Court of Claims is sitting by designation.

PER CURIAM.

Plaintiff, LeRoy Whitfield, is a law school graduate who, after failing the Illinois Bar Examination five times, brought a civil rights action [1] against the Board of Law Examiners and its individual members.[2] He alleged that: 1) the bar examination is unconstitutional because it has no rational connection with an applicant's fitness or capacity to practice law; 2) he passed the examination and should be so certified; and 3) procedural due process requires that he be permitted to see his exam papers and to compare them with model answers or answers of successful applicants. Plaintiff also alleged that the defendants had discriminated against him because of his race; this claim, however, has been abandoned on appeal. The district court dismissed plaintiff's complaint for failure to state a cause of action. We affirm.

## I.

Plaintiff alleged that, in addition to his fine academic and military record, he had extensive legal experience. This included employment at various legal aid clinics, where he litigated cases (see Ill. S.Ct. Rule 711), interviewed clients and prepared legal documents, and as "Legal Advisor, special policeman and Project Director" of the Gary, Indiana, Police Department, where he drafted search warrants and directed searches. Plaintiff argued that an applicant with his background clearly has the capacity and fitness to practice law; and, if the Illinois Bar Examination had a "rational connection" to such capacity and fitness, he would have passed it. He therefore concluded that, under Schware v. Board of Bar Examiners, 353 U.S. 232,[3] 77 S. Ct. 752, 1 L.Ed.2d 796, the examination is unconstitutional.[4]

We may assume *arguendo* that plaintiff's background does establish his ability to practice law. The fact that the bar examination has prevented one even exceptionally qualified individual from practicing is not, however, a sufficient reason to declare it violative of the Fourteenth Amendment. It is well settled that the question of whether a classification passes constitutional muster cannot be answered simply by assessing its chance effect upon a particular individual. *See, e. g.,* Colgate v. Harvey, 296 U.S. 404, 436, 56 S.Ct. 252, 80 L.Ed. 299. As the Supreme Court has concluded:

"[T]he fact that the Rules [concerning admission to the bar] may result in 'incidental individual inequality' [does not] make them offensive to the Fourteenth Amendment."

Martin v. Walton, 368 U.S. 25, 26, 82 S. Ct. 1, 2, 7 L.Ed.2d 5. Since plaintiff's attack on the Illinois Bar Examination is based solely upon such a chance effect, it is plainly insubstantial.[5]

---

1. Plaintiff alleged that his action arose under the Fifth, Sixth, Thirteenth and Fourteenth Amendments to the Federal Constitution, Article I, § 12 of the Illinois Constitution S.H.A., and 42 U.S.C. §§ 1981, 1982 and 1983. Jurisdiction was predicated upon 28 U.S.C. §§ 1331 and 1343(3) & (4).

2. Only the defendant Smith was served with process.

3. In *Schware* the Supreme Court held:
   "A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law."
   353 U.S. at 239, 77 S.Ct. at 756.

4. Plaintiff also cited as authority Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. In *Griggs*, however, the Supreme Court was concerned solely with the scope of Title VII of the Civil Rights Act of 1964.

5. It might be noted that the Eighth and Ninth Circuits have further concluded that essay-type examinations, such as those taken by plaintiff, have a rational connection with the capacity to practice law. Feldman v. State Board of Law Examiners, 438 F.2d 699, 705 (8th Cir. 1971); Chaney v. State

## II.

Plaintiff further alleged that, in light of his background, it was "impossible" for him to have failed a bar examination five times; thus, he must have passed and should be so certified. It was uncontroverted that the Board actually determined that plaintiff failed each of his five examinations. His contention, however, was that the Board made "serious mistakes" in grading.

■ Admission to practice in a state and before its courts is primarily a matter of state concern. *Schware, supra*, 353 U.S. at 248, 77 S.Ct. 752 (Frankfurter, J., concurring). And the determination of which individuals have the requisite knowledge and skill to practice may properly be committed to a body such as the Illinois Board of Law Examiners.[6] *Douglas v. Noble*, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590. A federal court is not justified in interfering with this determination unless there is proof that it was predicated upon a constitutionally impermissible reason. *See Schware, supra*, 353 U.S. at 238–240; *id.* at 248–249, 77 S.Ct. 752 (Frankfurter, J., concurring); *cf.* Theard v. United States, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342. Since nothing in plaintiff's complaint indicates that he was denied admission for such a reason, the district court correctly rejected plain-

tiff's request to overrule the judgment of the Board of Examiners.

■ Plaintiff, of course, did allege that defendants acted arbitrarily in grading his examination. There may very well be situations in which a capricious denial by state officials may give rise to a federal remedy. *See Schware, supra*, 353 U.S. at 239; *id.* at 249, 77 S. Ct. 752 (Frankfurter, J., concurring). But, as Justice Brandeis observed for a unanimous Court in Douglas v. Noble, *supra*, "it is not to be presumed that powers conferred upon the administrative boards will be exercised arbitrarily . . . . " 261 U.S. at 170, 43 S.Ct. at 305. In this case plaintiff has merely alleged, in essence, that an essay-type examination requires subjective evaluation and that the standards of grading are not susceptible to precise definition. We agree with the Eighth and Ninth Circuits that such an allegation is not sufficient to state a claim for federal relief. *Feldman, supra* note 5; *Chaney, supra* note 5.[7]

## III.

■ Finally, plaintiff alleged[8] that procedural due process requires that he be permitted to see his examination papers and to compare them with model answers or answers of successful applicants.[9] We may assume that the

Bar of California, 386 F.2d 962, 964–965 (9th Cir. 1967), cert. denied 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162. *See also* Application of Brewer, 430 P.2d 150, 152 (Alaska 1967). As Judge Tone, speaking for this court, recently observed:

"Educational requirements and proficiency examinations are time-tested means of assuring that practitioners meet minimum standards of competence."

Rasulis v. Weinberger, 502 F.2d 1006, 1010 (1974).

6. Ill.S.Ct. Rule 704(c) specifies the subjects upon which the Board may test. Precisely what proficiency is required in these subjects and whether an individual applicant possesses this proficiency are factual matters entrusted to the Board's judgment. *See* Ill.S.Ct. Rule 709.

7. State courts have also consistently approved essay examinations and have refused

to perform the role of "super bar examiner" by regrading them. See authority cited in Annot., Court Review of Bar Examiners' Decision in Applicant's Examination, 39 A. L.R.3d 719 (1971).

8. On appeal plaintiff has argued that he also should have been afforded a full-blown adversary hearing. It is not necessary that we specifically consider this contention. There is no allegation in the complaint that plaintiff ever requested a hearing. *Compare* Suckle v. Madison General Hospital, 499 F. 2d 1364 (7th Cir., 1974). Indeed, there is no such request in the complaint itself. It should be clear, however, that, if the procedures requested by plaintiff are not required, a hearing certainly is not mandatory.

9. The Illinois Supreme Court has not published any rule which specifically prevents the bar examiners from releasing examination papers. The Attorney General, how-

due process clause requires the state to employ fair procedures in processing applications for admission to the bar and, therefore, that an applicant who has failed the bar examination is entitled to some procedural protections. Nevertheless, we do not believe that, in the context of this case, the procedures requested by plaintiff are required by the Constitution.[10]

Plaintiff argues that these procedures were absolutely necessary to expose errors in the grading process and to discern his various strengths and weaknesses. Plaintiff, however, had been given five opportunities to write a bar examination which was offered biannually. Ill.S.Ct. Rule 704(c). There is no allegation that in the future, he will be denied the same opportunity.[11] As the Attorney General persuasively argues, reexamination provides an adequate means of exposing grading errors.[12] In addition, at least one of the examiners personally discussed with plaintiff his general performance in the exam and even graded sample answers

which plaintiff wrote. Given the availability of these alternative procedures, the requested procedures were not constitutionally required.

Furthermore, merely seeing his examination or comparing it with others would not allow plaintiff to expose errors or discern his abilities. These procedural rights would be virtually meaningless unless plaintiff also was able to confront the bar examiners and obtain from them explanations of their grades.[13] Several hundred applicants fail the Illinois Bar Examination annually. Requiring an explanation for each of these applicants would place an intolerable burden upon the bar examiners. It also would place at an unfair disadvantage those applicants who were taking the exam for the first time.

As plaintiff notes, several state courts have determined, either by rule or decision, that a failing applicant should be afforded the procedures which he seeks. *See, e. g.*, Application of Peterson, 459 P.2d 703 (Alaska 1969). These determi-

---

ever, stated at oral argument that this is the court's policy.

10. Chief Justice Warren, speaking for the Court in Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307, concluded:
> " 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. . . . Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account."

11. Ill.S.Ct. Rule 704(d) does provide in part: "An applicant who has been rejected at a fifth examination shall not again be admitted to an examination except upon the permission of the Board of Law Examiners or the Supreme Court. The board or Court so granting the permission may, as a condition to the granting of another examination, prescribe a further course of study."

At oral argument plaintiff stated that he did receive permission to take the exam a sixth time (and that he failed once again).

12. *See generally* Comment, Review of Failing Bar Examinations: Does Reexamination Satisfy Due Process?, 52 Bos.U.L.Rev. 286 (1972).
> The federal Administrative Procedure Act provides various procedural protections in the case of an "adjudication," which includes licensing. 5 U.S.C. § 554. The Act further provides, however, that these protections are not required where there is involved "proceedings in which decisions rest solely on inspections, tests, or elections . . . ." 5 U.S.C. § 554(a)(3). Implicit in this subsection is the recognition that, where examinations are available, further procedural protections are unnecessary. *See also* 1 K. Davis, Administrative Law Treatise § 7.09 (1958).

13. As plaintiff argues: "The appellees' denial of appellant's right to see his Illinois Bar Examination papers deprives the appellant of the opportunity to contest the grades of the examiners . . . ." Br. at 1.

nations, however, were made in the exercise of the courts' supervisory powers. It is axiomatic that the Fourteenth Amendment does not necessarily require those same procedural safeguards which a legislature or court may consider desirable as a matter of policy.

### IV.

Plaintiff has raised two other contentions. The first, which apparently was never considered by the district court, is that defendants violated Article I, § 12 of the Illinois Constitution.[14] As plaintiff recognizes, this purely state claim is pendent to his federal claims. Since we have concluded that the district court properly dismissed all of these claims, it was within the court's discretion to refuse consideration of the state claim. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218.[15]

Second, plaintiff contends that the district court should have entered a default judgment against defendants because their pleading in response to his complaint was filed three days late. In Duling v. Markun, 231 F.2d 833, 836 (7th Cir. 1956), cert. denied, 352 U.S. 870, 77 S.Ct. 96, 1 L.Ed.2d 76, this court stated that, whether a default judgment should be entered, is "a matter resting in the sound discretion of the trial judge." We find no abuse of that discretion.

The judgment of the district court is therefore

Affirmed.

---

14. Art. I, § 12 provides:

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly."

15. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted).