Willie J. **SINGLETON** and Johnny L. **Matthews**

v.

**LOUISIANA STATE BAR ASSOCIATION et al.**

**Ernest Lee CAULFIELD**

v.

**LOUISIANA STATE BAR ASSOCIATION et al.**

Civ. A. Nos. 74–3242, 74–3395.

United States District Court, E. D. Louisiana.

April 5, 1976.

Willie J. Singleton, pro se.

Ernest Lee Caulfield, pro se.

Carl J. Barbier, Alvin R. Christovich, Sr., M. Truman Woodward, Jr., New Orleans, La., for defendant.

Before WISDOM, Circuit Judge, and CHRISTENBERRY * and BOYLE, District Judges.

WISDOM, Circuit Judge:

The plaintiffs are graduates of Southern University Law School who took and failed the July 1974 Louisiana Bar Ex-

---

* Judge Christenberry concurred in the substance of this opinion before his death.

amination.[1] After they were notified of their failure by the Committee on Bar Admissions of the Louisiana State Bar Association,[2] the plaintiffs requested a hearing to review their examination papers. They were informed by Edward F. Wegmann, Chairman of the Committee on Bar Admissions,[3] that the rules of the Committee contained no provisions for review of any of the examinations. The plaintiffs then filed separate suits in district court[4] under 28 U.S.C. § 1343(3), alleging that the arbitrary criteria used to grade the papers and the failure to provide for post-examination review of failing grades violated their rights to due process and equal protection under the fourteenth amendment. 42 U.S.C. § 1983. Specifically, they alleged that the Articles of Incorporation of the Louisiana State Bar Association, by failing to provide written objective criteria for grading the examinations or for otherwise determining an applicant's ability to practice law, constituted an arbitrary and irrational means of determining who should be certified to practice law.[5] Additionally, they contended that the Committee's practice of destroying all papers shortly after grading,[6] thus preventing an applicant from challenging his allegedly failing grade, denied them the opportunity for post-examination review guaranteed by due process.

A three-judge court convened to hear the plaintiffs' claims for declaratory relief, injunctive relief, and damages. In their complaint, the plaintiffs sought a declaratory judgment adjudicating the Articles of Incorporation of the Louisiana State Bar Association unconstitutional, an injunction restraining the Bar Association from holding the February 1975 examination and all other examinations until procedures for administering the tests were modified,[7] an injunc-

1. Originally three plaintiffs filed suit in these consolidated actions. Plaintiff Johnny Matthews took the Louisiana bar examination for the fourth time in July 1975 and passed; we therefore dismiss his claim as moot. *Edwards v. Louisiana State Bar Assn.*, 5 Cir. 1974, No. 74–23, Section E, decided November 18, 1974; *DeFunis v. Odegaard*, 1974, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164. Plaintiff Singleton, who had already taken the February 1974 examination, also took the July 1975 examination and failed for the third time. Plaintiff Caulfield, whose first failure occurred in July 1974, did not take the July 1975 examination.

The statistics for the July 1974 Louisiana bar examination were as follows: of the 560 applicants who took the examination, 467 (83.39%) passed; 93 (16.61%) failed.

2. Several subjects are customarily scored together. Plaintiff Singleton was informed that he had failed the following: Civil Code II; Negotiable Instruments and Corporations; Constitutional Law and Conflicts of Law; Criminal Law, Procedure, and Evidence; Federal Jurisdiction and Procedure; Torts and Ethics. Plaintiff Caulfield was informed that he had failed the following: Civil Code I; Torts and Ethics; Negotiable Instruments and Corporations; Criminal Law, Procedure, and Evidence; Federal Jurisdiction and Procedure.

3. The Committee on Bar Admissions is organized under Article XIV, Section 1 of the Articles of Incorporation of the Louisiana State Bar Association. The Committee is composed of ten active members of the Bar Association, appointed by the Louisiana Supreme Court upon the recommendation of the Board of Governors of the Association. The ten members serve terms of five years each, without remuneration for their work.

4. Plaintiff Caulfield's complaint, filed approximately two weeks after plaintiff Singleton's and alleging virtually verbatim the same grievances, was consolidated for oral argument and disposition with the earlier filed case.

5. Although the power to certify applicants as qualified to practice law rests with the Committee, the ultimate power to admit an applicant to practice law in the state resides with the Louisiana Supreme Court. LSA–R.S. 37:211; *Ex Parte Steckler*, 1934, 179 La. 410, 154 So. 41; *In re Mundy*, 1942, 202 La. 41, 11 So.2d 398. The court could, theoretically, ignore the recommendation of the Committee of Bar Examiners or admit an applicant without such a recommendation. As a practical matter, however, applicants are admitted upon certification by the Committee, following their successful performance on the bar examinations.

6. By stipulation entered into in *Edwards v. Louisiana State Bar Association*, Civil Action No. 74–23, Section "E", the Committee has agreed to keep all papers since the 1974 examination pending resolution of this litigation. The examination papers have been under lock at the official office of the Committee on Bar Admissions, and have not been available to inspection or review by any of the applicants.

7. Before the case was heard by the three judge court in February 1975, the plaintiffs agreed to drop their request for an injunction to halt the administering of the February 1975 examination and all future examinations. Accordingly,

tion compelling the Committee to certify them to the Louisiana Supreme Court as qualified to practice, and an award of $800,-000 allegedly for economic loss, demoralization, and mental anguish.[8] The defendants moved to dismiss and for summary judgment, arguing that prior case law of Louisiana, this Circuit, and other federal courts, controls the result. We agree with the defendants' contentions and grant their motion for summary judgment.

## I.

## PROCEDURES FOR ADMINISTERING AND GRADING EXAMS

■ As noted above, the plaintiffs raised two challenges to the constitutionality of the Louisiana Bar Examinations. They first attacked the alleged lack of written criteria for grading the essay questions. A closer look at the procedures for administering and grading the examinations is helpful to understanding the plaintiffs' complaint.

## A.

## PRESENT PROCEDURES

Each applicant assumes a fictitious name, a letter, and a number. Not until the papers have been graded and finally passed on are the real names matched up with the fictitious name, the letter, and the number used for the examinations. In *Harris v. Louisiana State Supreme Court*, E.D.La. 1971, 334 F.Supp. 1289, a three-judge court held that the Louisiana Bar examinations were conducted so as to preserve the anonymity of the applicants during the writing and grading process.

There are nine essay-type examinations, each prepared by an individual member of the Committee on Bar Admissions. Each of the nine Committeemen examiners has twenty-five assistant examiners appointed by the Louisiana Supreme Court to help him grade the essays written on the question which he prepared. The papers[9] (nine for each applicant) are distributed at random to assistant examiners who grade them according to written criteria set forth by the Committee members. There are general criteria used by assistant examiners on all papers as well as specific outlines of issues or model answers to individual questions supplied by the Committeeman examiner who prepared a particular question. The general criteria are made known to the applicants before they take the examination:

> [T]he examiners and assistant examiners grading papers look principally to the applicant's ability to grasp and understand the problem or problems posed by each of the questions submitted to the applicants. Evidence of such an understanding and an intelligent discussion of the problems, based upon the applicant's analysis, will result in a satisfactory grade even though the conclusion reached is erroneous, where it is apparent that the applicant, if posed with the problem as an attorney, could by research of the understood problem, furnish his client with a correct solution.[10]

The specific instructions prepared by the Committeeman examiner, for obvious reasons, are disclosed only to the assistant examiners grading the particular question for which they were prepared. All assistant examiners for any particular examination use the same suggested issues or answers.

the Committee has continued to administer the semi-annual examinations.

8. Plaintiff Singleton sought damages in the amount of $500,000: $100,000 for economic loss; $200,000 for embarrassment, demoralization, and mental anguish; and $200,000 for loss of valuable legal experience. Plaintiff Caulfield claimed total damages of $300,000: $50,000 for economic loss; $150,000 for embarrassment, demoralization, and mental anguish; and $100,000 for loss of valuable legal experience.

9. The term "paper" is used here to refer to each of the nine individual essays written by each applicant and graded separately by different examiners. Thus, for the July 1974 bar examination's 560 applicants, there were 5,040 papers graded.

10. These criteria are set forth in a document prepared by the Committee on Bar Admissions and distributed to all applicants well before the examination, to acquaint them with the provisions governing bar admissions.

The assistant examiners read each paper and assign a grade of "passing" (70 percent and above), "borderline" (60 to 69 percent), or "failing" (below 60 percent). The papers are then submitted to the Committeeman examiner. Papers initially graded "passing" are not reviewed. By order of the Louisiana Supreme Court, any paper receiving a grade of "borderline" or "failing" must be reread by the Committeeman examiner who prepared the question. If he disagrees with the assistant examiner's opinion that the writer failed to achieve a passing grade, he re-marks the paper as a "pass"; it is not thereafter reviewed. If the Committeeman examiner agrees with the assistant that the paper is either "borderline" or "failing", it is forwarded to the entire Committee, where one or more members again reads and grades the paper. The Committee's determination is final. The papers are then destroyed.

From the foregoing procedures, it is clear that any essay which ultimately receives a failing grade will have been read at least three times by a minimum of three different individuals. Moreover, since an applicant must fail three separate essay questions before he is deemed to have failed the entire examination,[11] any unsuccessful applicant is guaranteed at least nine rereads of his failing papers by nine different individuals before the Committee determines that he failed the bar examination.

## B.
## PLAINTIFFS' CHALLENGES TO PRESENT GRADING PROCEDURES

Despite the existence of both general and specific written criteria to aid assistant examiners in grading the papers, the plaintiffs charge that the system is unnecessarily "subjective", and the criteria so arbitrary as to be irrational and therefore violative of due process. On the one hand, they argue

that the opinion of a single Committeeman examiner, who submits written guidelines to his assistant examiners, is not a valid basis for judging an applicant's performance. On the other hand, they contend that the failure to provide more objective criteria for assistant examiners affords them too much discretion in exercising their own opinions. Since the applicant's paper may be graded by any one of a number of different assistant examiners, the plaintiffs argue that there is no uniformity in the grading of examinations, and thus no guarantee that the applicants will be subject to the same standards for each essay. Thus, the crux of the plaintiffs' argument seems to be not only that the opinion of a single individual (either Committeeman examiner or assistant examiner) may determine an applicant's grade on a particular question, but also that the basis for this single conclusive judgment may vary from grader to grader.

### 1.
### SUBJECTIVE JUDGMENT OF A SINGLE COMMITTEEMAN EXAMINER

First, we find no merit in the plaintiffs' argument that the opinion of a single Committeeman examiner may determine an applicant's success or failure on a particular question, thus making the present procedures arbitrary, irrational, and violative of due process. As noted above, the assistant examiners grade each paper according to general, as well as specific criteria, thus providing some flexibility in the application of the Committeemen examiners' guidelines. Additionally, all papers graded "failing" or "borderline" by assistant and Committeemen examiners are guaranteed further review by one or more members of the entire Committee. Thus, even accepting the plaintiffs' argument that a single Committeeman examiner could, through the use of guidelines and model answers, impose his own "judgment" on the assistant examiner's first reading the papers, this judgment

11. It is also possible for an applicant to fail the entire examination by failing two Louisiana Code examinations. Even here, however, the applicant is guaranteed at least six rereads of his failing papers. Article XIV, Section 10,

Articles of Incorporation of the Louisiana State Bar Association, as amended by Order of the Supreme Court of Louisiana, June 1966. *See* note 15 *infra*.

as to any paper deemed "failing" or "borderline" will be reviewed by the Committee as a whole. There is, therefore, no possibility, such as the plaintiffs suggest, that the opinion of a single Committeeman examiner could determine an applicant's failing grade on any particular question.

## 2.

### UNBRIDLED DISCRETION OF THE ASSISTANT EXAMINERS

#### a.

#### Lack of Objective Criteria

The plaintiffs also argue, somewhat inconsistently, that the criteria submitted by the Committeemen examiners are so vague and "subjective" as to give assistant examiners too much discretion in the grading of individual essays. Two responses to this argument are appropriate. First, insofar as the plaintiffs attack the lack of "objective" criteria for grading essay examinations, we note that this challenge has been rejected by virtually every court which has considered it. *Tyler v. Vickery*, 5 Cir. 1975, 517 F.2d 1089, 1102–03; *Whitfield v. Illinois Board of Law Examiners*, 7 Cir. 1974, 504 F.2d 474, 476–77 n. 5; *Feldman v. State Board of Law Examiners*, 8 Cir. 1971, 438 F.2d 699, 705; *Chaney v. State Bar of California*, 9 Cir. 1967, 386 F.2d 962, 964–65, *cert. denied* 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162.[12] Although the plaintiffs claim not to challenge the essay-type examination per se, their challenge to the only feasible form of grading such examinations belies this contention. By challenging the necessarily flexible and subjective criteria required to grade any essay, the plaintiffs indirectly challenge the form of examination itself. Rejecting a similar attack on the Georgia bar examination, this Court recently noted:

> Since subjective, as opposed to objective, grading is a necessary corollary to the administration of essay-type questions, an attack on subjective grading *per se* must perforce include the allegation that the

use of essay examinations is itself irrational. This contention has uniformly been rejected by the courts which have considered it.

*Tyler v. Vickery*, 5 Cir. 1975, 517 F.2d 1089, 1102–1103.

In the instant case, the written criteria submitted to the assistant examiners by the Committeemen examiners who prepared the questions guarantee as fully as possible that uniform standards will be applied. The outlines of issues and model answers are as formalized as such criteria can be, given the nature of an essay examination. Not only are such grading procedures "rationally related" to the purpose of testing applicants for admission to the bar, they are the best criteria for doing so. As the Ninth Circuit stated in *Chaney State Bar of California*, 9 Cir. 1967, 386 F.2d 962, 964:

> To us it seems patent on its face that [the State] has the right to allow its Committee of Bar Examiners to use [an essay—] type of examination in demonstration by those seeking admission to its bar, as a qualification standard, that they have the capacity to analyze general legal situations and to make application thereto of such general legal knowledge as can be expected to be possessed by the graduates of accredited law schools. The existence of this qualification certainly has a rational connection with the capacity to practice law, for it inherently is the primary basis of general legal service. And of course there also is involved in such an essay examination an indication as to the possession or lack of knowledge in the legal fields to which the questions relate.

#### b.

#### Subjective Judgment of a Single Assistant Examiner

Second, insofar as the plaintiffs object to the possibility that the unbridled discretion of a single assistant examiner will determine their fate on any particular question, our previous discussion in regard to Com-

---

12. *See also* authorities cited in Annot., Court Review of Bar Examiners' Decision in Applicant's Examination, 39 A.L.R.3d 719 (1971).

mitteemen examiners applies with added force. Not only are the "failing" grades given by assistant examiners reread by the Committeemen examiners, but they are again reread by the Committee as a whole, thus guaranteeing two reviews of the assistant examiners original judgment. Thus, the most the plaintiffs can object to is the possibility that an inferior paper, initially graded "passing" by an assistant examiner, would retain its passing grade without review, while an equally poor paper, initially graded "borderline" or "failing", would retain its below-passing grade after two reviews. In no circumstances, however, would a paper be given a final grade of "failing" without having undergone at least two reviews of the initial mark, first by the Committeeman examiner and later by the members of the Committee as a whole. Thus, the plaintiffs' contention that the subjective opinion of one individual could result in a failing grade, even as to a single question, is contrary to the evidence in the record and furnishes no grounds for relief.

### 3.
### VARYING JUDGMENTS BY NUMEROUS INDIVIDUAL EXAMINERS

Finally, insofar as the plaintiffs object to the possibility that a paper will be subjected to the varying judgments of different individuals, this is an unavoidable necessity of bar examinations. Plaintiffs do not seriously contend that due process requires all papers to be graded by a single individual to ensure uniform judgment. As noted above, the guidelines prescribed by the Committee and by the individual Committeemen examiners who prepare the questions maximize the chances for uniform standards of grading. Furthermore, failing applicants as to any given question are guaranteed review by the Committeeman

examiner who prepared that question. Finally, the review provided by the Committee as a whole further protects applicants from unduly harsh judgments of individual graders.

In sum, there is neither the possibility that the opinion of a single Committeeman examiner, through the use of his guidelines or model answers, shall determine an applicant's failing grade on a particular question, nor the possibility that the opinion of any single individual shall determine an applicant's failing grade on any question. The criteria provided for grading the examinations are neither irrational nor arbitrary, and the application of such criteria by numerous different graders is a legitimate and effective means of grading the examinations. We follow the trend of recent court decisions in refusing to find a violation of due process in such methods of testing applicants to the bar and find that this first attack furnishes no basis for federal relief.

### II.
### NO RIGHT OF REVIEW

[4, 5] The plaintiffs' second challenge to the constitutionality of the Louisiana Bar Exam is the destruction of papers after grading [13] and the failure of the Articles of Incorporation of the Louisiana Bar Association to provide for a post-examination review of failing papers. The plaintiffs contend that these procedures deprive them of the opportunity to expose grading errors or otherwise to contest their grades and thus deny them due process.

This contention is not a novel one. It has been considered and rejected both expressly and inferentially by this Court, the Louisiana Supreme Court, and several other circuit courts.[14] In *Tyler v. Vickery*, 5 Cir.

---

**13.** See note 6 supra.

**14.** This Court's attention has been brought to only one case where a state supreme court has chosen to allow unsuccessful applicants to the bar a review of their failing papers. *In re Peterson*, Alaska 1969, 459 P.2d 703. Even there, however, the State Supreme Court ex-

pressly noted that it granted such review as part of its inherent power to control admission to the state bar, and not on constitutional grounds. To our knowledge, no state or federal court has ever held that the federal Constitution requires a post-examination hearing as part of the fourteenth amendment's guarantee of due process.

1975, 517 F.2d 1089, an unsuccessful applicant to the Georgia Bar challenged that State's failure to provide any form of review of a failing grade at the behest of the applicant. This Court rejected the plaintiff's argument that due process guaranteed a post-examination hearing, noting that an adversary hearing was unlikely to afford "significantly quicker relief to an erroneously failed applicant than would the right to retake the examination at its next administration." 517 F.2d at 1104. On the whole, the Louisiana Bar Association has adopted reasonably liberal standards for retaking the examinations.[15]

In *Briggs v. Louisiana State Bar Association*, Supreme Court of Louisiana # 46331, per curiam opinion of October 23, 1962, a copy of which is an exhibit, the Supreme Court of Louisiana declared the procedures for administering the Bar examinations, including the post-grading destruction of papers, "fair and impartial". On the plaintiff's petition for review to the United States Supreme Court, the appeal was dismissed "for want of a substantial federal question". *Briggs v. Louisiana State Bar Association*, 1963, 374 U.S. 96, 83 S.Ct. 1690, 10 L.Ed.2d 1028.[16]

**15.** Section 10 of Article XIV of the Articles of Incorporation of the Louisiana State Bar Association as amended by Order of the Supreme Court, June, 1966, provides:

"(A) An applicant who fails to pass five or more of the examinations shall be considered as failing the examination as a whole. Such applicant shall be permitted to take a re-examination at the next regular examination of the Committee on Bar Admissions. However, should any such applicant again fail to pass five or more of the examinations, he shall not be again examined by the Committee until the second regular examination following the last examination, at which he failed; provided, however, that this last restriction shall not apply to applicants who are in the active service of the United States in connection with the National Defense, or who will, within six months, following the date of such regular examination, be called to or will enter such active service.

(B) An applicant, who, after June 15, 1965, on his first examination passes five or more of the separate examinations, but who fails either two Code examinations, or any three examinations shall be considered as failing the examination as a whole. Such applicant shall be placed on a special list and in the event of his future application for examination he shall be re-examined on only those separate examinations he failed in his first examination. Should such applicant placed on such special list, upon re-examination as above provided, pass some of the separate examinations originally failed, those shall be eliminated from future re-examinations under the above. An applicant who has been placed on such special list shall be deemed to have passed the examination as a whole when he has cumulatively passed seven of the nine examinations provided that, of the two examinations not passed not more than one is on a Code subject."

In making the foregoing determination the following are considered as CODE SUBJECTS for the examination:
1. Civil Code I
2. Civil Code II
3. Civil Code III
4. Louisiana Code of Civil Procedure

The following are considered NON–CODE SUBJECTS:
1. Torts and Ethics
2. Negotiable Instruments and Corporations
3. Constitutional Law and Conflict of Laws
4. Criminal Law, Procedure and Evidence
5. Federal Jurisdiction and Procedure

In summary, under the above provisions the applicant who on taking the nine examinations fails five or more is deemed to have failed completely and must retake all nine subjects on re-examination. The applicant who out of the nine examinations passes five or more but fails either two code subjects or any three subjects is conditioned. Such party on re-examination takes only those subjects failed the first time. When cumulatively an applicant reaches a point where he has passed seven subjects and the remaining two subjects are not both Code subjects, he shall be deemed to have passed the examination.

We note that in Louisiana, while the right to retake the examination is not unqualified, it is not so arbitrary as to offend due process. Compare *Tyler v. Vickery*, 5 Cir. 1975, 517 F.2d 1089, *with Parrish v. Board of Commissioners of the Alabama State Bar*, 5 Cir. 1976 (No. 73–3553); *see also Whitfield v. Illinois Board of Law Examiners*, 7 Cir. 1974, 504 F.2d 474, 478 n. 11.

**16.** Other state courts have rejected similar arguments. *See, e.g., Petition of Pacheco* (1973) 85 N.M. 600, 514 P.2d 1297; *In re Monaghan* (1967) 126 Vt. 193, 225 A.2d 387; *In re Chaches' Petition* (1962) 78 Nev. 102, 369 P.2d 455; *Mrotek v. Nair* (1967) 4 Conn.Cir. 313, 231 A.2d 95; *Ex Parte Ross* (1943) 196 Ga. 499, 26 S.E.2d 880.

Finally, several other Courts of Appeals have rejected the argument that due process mandates a post-examination review for failing applicants. *Whitfield v. Illinois Board of Law Examiners*, 7 Cir. 1974, 504 F.2d 474, 477–78; *see also Feldman v. State Board of Law Examiners*, 8 Cir. 1971, 438 F.2d 699, 703. Most recently, in *Whitfield*, the Seventh Circuit found that the imposition of a right of review would place an intolerable burden on the bar examiners. There, as in *Tyler*, the court noted that an adequate check on errors was provided by the opportunity given applicants to retake the examination at periodic intervals.[17]

The plaintiffs' insistence on an adversary hearing as the only means of satisfying due process rests upon lack of understanding of the authority vested in the Committee on Bar Admissions. Even if an applicant were afforded a hearing to contest the judgment of the examiners, the decision would ultimately rest with the Committee itself; since the Committee already examines the papers of failing applicants before the results are published, it is difficult to imagine what evidence an applicant could present at a hearing which would alter the Committee's conclusions. Moreover, for the purpose of discovering technical errors in the computation of an applicant's final score, there is no reason to believe that an adversary hearing would be any more effective than the multiple review already provided by the Committee. *See Whitfield, supra*, 504 F.2d at 477 n. 8.

We note that in addition to the opportunity to retake the examination in order to demonstrate their competence to practice law, applicants are already granted significant internal review of their grades before the results are published. As outlined above, the three-tiered review procedures comprising the internal grading system of the Committee not only operate to correct so-called "errors" in computing an applicant's grade, but also provide additional insurance against the overly harsh judgment of a single examiner.

In sum, the evidence establishes that the present procedures utilized by the Committee already afford three levels of review for failing papers. This Court does not interpret due process to require a fourth. We conclude, from an examination of the grading system used by the Committee on Bar Admissions, together with decisions from this Circuit and others, that the procedures for administering and grading the Louisiana Bar Examination are a fair and rational means of measuring the competence of applicants to practice law. We further conclude that the failure to provide post-examination review of failing papers does not rise to the level of a constitutional violation. The internal review, as well as the liberal provisions for retaking the examination, provide adequate review of failing papers to meet the requirements of due process.

As there are no disputed issues of fact, and we have resolved the legal issues in favor of the defendants, we grant their motion for summary judgment.

---

**17.** For the same conclusion, *see* Comment, Review of Failing Bar Examinations: Does Re-Examination Satisfy Due Process? 52 Bos.U.L. Rev. 286, 300–301 (1972):

Assuming that some form of review is required, re-examination affords most of the protection which would be afforded by an adversary hearing. The goal of an adversary hearing, accomplished through examination of answers, comparison with model answers or cross-examination of the examiners, and argument with aid of counsel, is to demonstrate error in the examination process. But, assuming that mistakes in examination grading are rare, the likelihood of the same examinee being the victim of mistake again is extremely low and by the third time borders on the impossible. And, since adversary hearings are themselves subject to error, only if a hearing offered a substantially higher probability of accuracy than re-examination, could its greater expense and costs to the State be warranted. It is submitted that the hearing does not have any significantly higher likelihood of accuracy.

*See also Parrish v. Board of Commissioners of Alabama State Bar*, 1973, M.D.Ala. (No. 3809–N), *reversed on other grounds*, 5 Cir. 1976 (No. 73–3553).