Greyling Byron POATS,
Plaintiff-Appellant,

v.

Richard M. GIVAN, Chief Justice, et al.,
Defendants-Appellees.

No. 80–2030.

United States Court of Appeals,
Seventh Circuit.

Submitted May 13, 1981.*

Decided June 10, 1981.

Greyling Byron Poats, pro se.

Theodore L. Sendak, Atty. Gen. of Indiana, Indianapolis, Ind., for defendants-appellees.

Before SPRECHER, WOOD and CUDAHY, Circuit Judges.

PER CURIAM.

We hold that the Indiana Supreme Court rule limiting the number of bar examinations which an applicant may take to four is constitutional.

I

The plaintiff is a law school graduate [1] who has failed the Indiana bar examination

same infirmities as the faulty distinctions of the *Doyle* and *Hale* cases.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective August 1, 1979); Circuit Rule 14(f). Plaintiff-appellant has filed such a statement and requested oral argument.

Upon consideration of the statements, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

1. The complaint only alleges that the plaintiff "was deemed a person qualified in all aspects to sit for the Indiana Bar Examination," but in a subsequent motion to appear in the district court, the plaintiff identifies himself as "a graduate from an accredited law school," without identifying the school.

on four different occasions.[2]  He brought this action under 42 U.S.C. §§ 1983 and 1985(3) against the justices of the Indiana Supreme Court and the members of the State Board of Law Examiners, for damages and for injunctive and declaratory relief.  The plaintiff contends, as summarized in his complaint, as follows:

... [T]he plaintiff has been denied his right to "due process" as guaranteed pursuant to the Fifth (5th) and Fourteenth (14th) Amendments by not being allowed a hearing in regards to taking the Indiana Bar Examination a fifth (5th) time, that by not being allowed to sit for the February 1980, and future Indiana Bar Examinations if necessary, violates equal protection under the laws as guaranteed pursuant to the Fourteenth (14th) Amendment ....

The district court dismissed the action upon finding that the complaint failed to state a claim upon which relief could be granted.  The plaintiff-applicant for admission has appealed.

In Indiana, the Supreme Court has exclusive jurisdiction to admit attorneys to practice law.  Rule 3, Indiana Supreme Court Rules for Admission to the Bar and the Discipline of Attorneys.  The satisfactory passing of a bar examination, administered by the State Board of Law Examiners, is a prerequisite to admission.[3]  Rule 17.  Rule 20 of the Supreme Court's Rules provides:

No applicant shall be admitted to more than four [4] examinations.

## II

■  The plaintiff-applicant's complaint is filled with repetitious claims of lack of a due process hearing.  Applicant alleges that he "was informed [by the Supreme Court Administrator] that he could not file for mandatory relief with the Supreme Court."

Not being able to file for mandatory relief is not equivalent to denial of a hearing.

The Indiana Constitution, Article 7, section 4, provides in part that the "Supreme Court shall have no original jurisdiction except in admission to the practice of law ...."  Rule 14 of the Indiana Supreme Court Rules for Admission provides in part as follows:

Review of final action by the state board of law examiners shall be as follows:

(1) The state board of law examiners shall adopt such procedure for review of an applicant, aggrieved by failure of such board to award said applicant a satisfactory grade upon applicant's first examination as shall be approved by said board, and the decision by said board shall be final; and no appeal to the Supreme Court shall be permitted upon the failure of applicant to pass the first examination.

(2) The state board of law examiners shall adopt such procedure for review of an applicant, aggrieved by failure of said board to award said applicant a satisfactory grade upon any re-examination, as shall be approved by the Supreme Court of Indiana.  Any applicant aggrieved by the final review action of said board, in refusing to recommend to the Supreme Court of Indiana the admission of the applicant to practice law in Indiana by reason of applicant's failure to pass the written examination upon any re-examination, may within twenty (20) days of such final determination by said board, file a petition with said board for review of the same by the Supreme Court; whereupon, the secretary of said board shall, within five (5) days thereafter, transmit to the Supreme Court, the file relating to such applicant's written exam-

---

2.  The complaint does not specify the times when these four examinations were allegedly taken.

3.  In addition, any person who has been admitted to practice law in the highest court in any other state may be admitted to practice law in Indiana upon satisfying certain conditions, including actively engaging in the practice of law

in his or her home state for a period of five years of the seven years preceding application. Rule 6, Indiana Supreme Court Rules for Admission to the Bar and the Discipline of Attorneys.  Rule 6(10) provides that "[n]o one may be admitted on foreign license who has failed the Indiana law examination four (4) times."

ination, including the transcript of record of all actions by the state board of law examiners relating thereto, and the court shall enter such order as in its judgment is proper, which shall thereupon become final.

The Indiana Supreme Court has accepted its original jurisdiction under the above rule and under predecessor rules. *Stern v. State Board of Law Examiners*, 245 Ind. 526, 199 N.E.2d 850 (1964); *Petition of Moritz*, 244 Ind. 374, 192 N.E.2d 458 (1963).

The applicant has not alleged that the review outlined in Rule 14 was denied to him or was not available to him. In any event the possibility of re-examination satisfied due process. *Whitfield v. Illinois Board of Law Examiners*, 504 F.2d 474, 478 (7th Cir. 1974); *Tyler v. Vickery*, 517 F.2d 1089, 1104 (5th Cir. 1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).

The applicant has been allowed to take the examination and three re-examinations, each with the opportunity for review by the Indiana Supreme Court. In our view, this adequately satisfies due process requirements for a hearing.

### III

What remains is applicant's argument that an absolute limit of four examinations is unconstitutional.

■ A state can require high standards of qualification, such as proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). Bar examinations have a rational connection with the applicant's fitness or capacity to practice law. *Whitfield v. Illinois Board*

of *Law Examiners*, 504 F.2d 474, 476–77 (7th Cir. 1974); *Feldman v. State Board of Law Examiners*, 438 F.2d 699, 705 (8th Cir. 1971); *Chaney v. State Bar of California*, 386 F.2d 962, 964 (9th Cir. 1967), *cert. denied*, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968). The determination of which individuals have the requisite knowledge and skill to practice law is properly committed to the board of law examiners. *Martin-Trigona v. Underwood*, 529 F.2d 33, 35 (7th Cir. 1975). The mere fact that an applicant has failed to pass a state bar examination does not in itself create federal jurisdiction to review that failure. *Doe v. Pringle*, 550 F.2d 596 (10th Cir. 1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *Whitfield*, 504 F.2d at 476. *Cf. Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957) (narrow scope of federal jurisdiction to review state disbarments).

■ The applicant's difficulty in this case is that he must allege facts to establish by his complaint that although any single failure to pass a bar examination is not reviewable by a federal court, four such failures (and the lack of an opportunity to try for a fifth or more) somehow break the rational connection otherwise existing between passage of the bar examination and an applicant's fitness or capacity to practice law. Stating the proposition more favorably to the applicant, he contends that he is entitled to unlimited attempts to pass and that the number of failures is entirely irrelevant to the question of his fitness to practice.

Twenty-six states impose a limit on the number of bar examinations which an applicant may take.[4] Of these, fifteen states provide for the taking of examinations beyond the limited number by special permission of either the state supreme court or the state board of law examiners and usually after proof of further law study.[5] The re-

4. National Conference of Bar Examiners, The Bar Examiners' Handbook (1980) at 424–426. Four states impose a limitation of 5 times; five states impose 4 times; fifteen states impose 3 times; and two states (Colorado and Wisconsin) impose a limitation of 2 times.

5. For example, Illinois Supreme Court Rule 704(d), Ill.Rev.Stats. ch. 110A, § 704(d) provides:

   If an applicant fails to pass his first examination, he may be permitted to take successive examinations provided he furnishes the board with satisfactory evidence of diligent

maining eleven states, including Indiana, impose an absolute limit with no discretionary power in the supreme court or board of law examiners to permit additional examinations. Of these eleven states, one (Alabama) fixes the limit at 5 examinations; four states (Indiana, Minnesota, Nevada and West Virginia) fix the limit at 4 examinations; and six states (Delaware, Florida, Kentucky, Nebraska, Oklahoma and Oregon) fix the limit at only 3 examinations.[6]

Of course, even the fifteen states which express in their rules some flexibility regarding the limit on the number of examinations do so at the complete discretion of the state supreme court or board of bar examiners, and that discretion is apparently not freely exercised. For example, Colorado limits the number of examinations to only two, grants permission routinely to take a third examination, but makes it very difficult to take a fourth examination.

In *Younger v. Colorado State Board of Law Examiners*, 625 F.2d 372, 374 (10th Cir. 1980), the court, in upholding as constitutional the denial by the Colorado Supreme Court of the applicant's petition to take a fourth examination, indicated how difficult that procedure was:

> The Colorado Supreme Court generally imposes a waiting requirement of two or three years after a third failure. The reason for the waiting period is to allow the individual to mature and possibly engage in some kind of law-related work.... The Admissions Committee will then review an application to take the examination a fourth time, focusing on the prior examination scores, what the individual has been doing in the interim, and any other relevant factors an individual may present or which the Admissions Committee may discover....

If the results of the review of the Admissions Committee so justify, a recommendation is made to the full Colorado Supreme Court that an independent evaluation of the applicant be made to determine whether the person should be permitted to take the examination a fourth time. The Court accepts this recommendation from the Admissions Committee and the individual is then sent to confer with a local law professor.

> The professor reviews the individual's prior bar examinations, confers personally with the individual, and reviews any other relevant material. If the professor recommends that permission be granted to take the examination a fourth time, it is always on the condition that certain courses be taken in areas where the person has shown weakness. The Colorado Supreme Court adopts the law professor's recommendation and the individual is allowed to take the examination a fourth time if the prescribed courses are taken and passed.

\* \* \* \* \* \*

> Persons who have been denied an opportunity to take the examination a fourth time are given an opportunity to meet personally with Justice Groves, who explains the Colorado Supreme Court procedure on taking the examination more than three times.

The court concluded that denial of a fourth examination was valid under the due process and equal protection clauses as a rational policy adopted in the exercise of the state's recognized authority to assure a competent bar.

Although it is obvious that preparing to take additional examinations beyond the first one has some educational value and tends to increase the chances that ultimate success will produce a competent lawyer,

---

study of the law since his prior examination. An applicant who has been rejected at a fifth examination shall not again be admitted to an examination except upon the permission of the Board of Law Examiners or the Supreme Court. The board or Court so granting the permission may, as a condition to the

granting of another examination, prescribe a further course of study.

**6.** Presumably, a particular state supreme court with power over the admission to the bar would retain the power, even if not generally exercised, to allow examinations beyond the prescribed limit.

we can not conclude that the state of Indiana unconstitutionally exceeded its authority to insist on a competent bar by limiting the number of examinations to four.

If an applicant is contending that a clerical or mathematical or arbitrary mistake has resulted in his failure, even assuming that such an error causes one out of every one hundred applicants to fail when he should have passed, the chances that the same individual would be a victim of that kind of error on four different occasions is about one in one hundred million.[7] The applicant has not alleged that the Indiana bar examination questions are for some reason not as valid a testing device as those used in other states.[8]

Published statistics show that in recent Indiana examinations, the passing rate is around 80% for first-timers and significantly less for repeaters. The figures for repeaters are not broken down into the number of examinations taken by repeaters.[9] The district court in *Younger v. Colorado State Board of Bar Examiners*, 482 F.Supp. 1244, 1247 (D.Colo.1980), showed that in nine examinations given in Colorado from February, 1975, to February, 1979, the pass rates were as follows: [10]

| | |
|---|---|
| 1st time | 77% |
| 2nd time | 61% |
| 3rd time | 46% |
| 4th time | 20% |
| 5th time | 0 |

The Tenth Circuit concluded in *Younger*, *supra*, 625 F.2d at 377:

> However, this does not mean that success on the examination is an absolute determinant of capacity and that other concerns of possible fundamental deficiencies in a repeating examinee may not be taken into account by the State .... Despite final success, earlier failures might well be of concern to the State. Both Justice Groves and Justice Erickson considered three failures of the Colorado bar examination to be indicative of an individual's lack of competence and ability to practice law. Statistics regarding the low pass rate for persons taking a fourth examination tend to support this conclusion. Thus justifiable doubts could be felt about those taking four or more examinations, despite ultimate success. And we do not feel the fact that permission in some instances has been given for more than three examinations disproves any validity of concerns about allowing more than three examinations.

In sum, while concededly an applicant may eventually become minimally qualified after several periods of preparing for and taking successive bar examinations, a state is constitutionally able to require a somewhat more stringent standard for those who continue to fail after multiple attempts. *See Ktsanes v. Underwood*, 467 F.Supp. 1002 (N.D.Ill.1979) (three-judge court opinion by J. Pell) (applicant who has failed Illinois examination is ineligible for admission on foreign license); *see also Martin-Trigona v. Underwood*, 529 F.2d 33 (7th Cir. 1975) (applicant who passed bar examination may be denied admission on basis of character). We hold that a limit of four times for taking the bar examination satisfies reexamination due process and bears a

---

7. *Tyler v. Vickery*, 517 F.2d 1089, 1104 (5th Cir. 1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976). *See also*, Comment, *Review of Failing Bar Examinations: Does Reexamination Satisfy Due Process?* 52 Bos.U. L.Rev. 286 (1972) at 301 n.115.

8. The National Conference of Bar Examiners maintains a bar examination question library of over 6,000 questions given in previous examinations. State boards of bar examiners regularly request copies of these questions in order to obtain ideas for new questions. From 1953 to 1980, Indiana questions were requested 1,836 times (6th highest) by other boards and in 1980, 50 times (5th highest). National Conference of Bar Examiners, The Bar Examiners' Handbook (1980) at 247–48.

9. National Conference of Bar Examiners, The Bar Examiners' Handbook (1980) at 327, 329.

10. Rule 214 of the Colorado Rules of Civil Procedure provided: "Any applicant who fails on examination to obtain a passing grade may take the next succeeding examination. If he then fails he will be re-examined only by special permission of the Court en banc and for good cause shown." *Younger*, 625 F.2d at 373.

rational connection to the applicant's fitness and capacity to practice law.[11]

The judgment appealed from is affirmed.[12]

AFFIRMED.

---

**11.** *See Whitfield v. Illinois Board of Law Examiners*, 504 F.2d 474, 478 (7th Cir. 1974).

**12.** In his brief on appeal, plaintiff cites cases, a close reading of which reveals that the kinds of statutory schemes at issue therein affected important liberties or involved sensitive classifications which warranted a review under a strict to intermediate level of scrutiny: *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (public school teacher beyond her fourth month of pregnancy must be given opportunity to show that she is fit to continue teaching); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (student who applied to a state university from out-of-state must be given an opportunity to

qualify for reduced tuition as a resident by proving that she has become a bona fide resident); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (unwed father must be given opportunity to prove himself fit as a parent in custody proceedings). *See generally*, Lawrence H. Tribe, *American Constitutional Law* (1978) § 16–32, pp. 1092–1096. On the other hand, as plaintiff concedes, the practice of law is not a fundamental right, and Indiana's classification of bar applicants is not based on suspect criteria. Thus, rules governing admissions to the state bar are appropriately reviewed under a minimum level of scrutiny. *See Younger, supra*, 625 F.2d at 377 n.3.