**Barbara CARROLL, next best friend of Michael Carroll**

v.

**Michael CAPALBO, et al.**

**Civ. A. No. 83–0107 S.**

United States District Court, D. Rhode Island.

April 14, 1983.

---

Rhode Island Protection and Advocacy System by S. Arlene Violet, S. Catherine Gibran, Providence, R.I., for plaintiff.

Bennett R. Gallo, Coventry, R.I., for defendants.

## MEMORANDUM DECISION AND ORDER

SELYA, District Judge.

This case involves a parent's refusal to permit individuals associated with the Coventry, Rhode Island school system to conduct an assessment of her child pursuant to regulations promulgated to insure the appropriateness of a handicapped child's education. The plaintiff is the natural mother and legal guardian of Michael Carroll. She initially sought a temporary restraining order enjoining the defendants[1] from per-

---

1. Capalbo is the special education director of the Coventry school system. The remaining defendants are the members of the Coventry

forming an assessment of Michael tentatively scheduled for the week of February 7, 1983. At a hearing on February 9, 1983, the Court denied this relief. The defendants, however, acquiesced in the Court's request that the desired assessment not be carried out until the Court could conduct a further hearing. With the consent of the parties, the Court merged hearing on preliminary injunction with trial on the merits, and assigned the matter for further proceedings on April 4, 1983. In the interim, the case was answered by the defendants, and ably briefed by all parties. Additionally, the plaintiff filed a motion for partial summary judgment in which she contends that her rights (and those of her son) will be violated by the school system's impending assessment of Michael.[2] On April 4, 1983, the parties submitted the case to the Court on an agreed statement of facts, together with the administrative decisions pertaining to Michael's placement from and after February 10, 1981.[3]

## I.

The plaintiff and her son were and are, at all times material to this action, residents of Coventry. Michael is a handicapped child entitled to the prophylaxsis of the Education of the Handicapped Act, 20 U.S.C. § 1400 et seq. (1976) (the "Act"). He falls squarely within all relevant operative definitions. See 20 U.S.C. § 1401(1); R.I.Gen. Laws § 16–24–1; 34 C.F.R. § 300.5 (1982);

and Rhode Island Board of Regents' Regulations Governing Education for Handicapped Children, General Regulations, ("State Regulations"), II, 1.0. The defendants, collectively, are charged with provision and administration of suitable education for handicapped children within the Coventry school system, and defendant Capalbo has direct and immediate responsibility for this. State Regulations, VIII, 1.0.

In September of 1979, Michael was placed in a special education program in the Coventry schools. He remained in that program throughout the 1979–80 school year. On May 22, 1980, the plaintiff, on her own initiative, brought Michael to the Emma Pendleton Bradley Hospital ("Bradley") for evaluation. Subsequent to this evaluation, Mrs. Carroll enrolled Michael in a Bradley program. This enrollment lasted until March of 1981. Early that year, however, the Coventry special education staff discussed the Carroll situation and reviewed the assessments performed by Bradley personnel. The staff, apparently using Bradley's findings, developed an individualized education program ("IEP")[4] for Michael on February 10, 1981 which mandated his return to a special education class within the Coventry school system. This IEP, and the placement dictated thereby, is the subject of the state court litigation referred to in note 3 ante. Michael, however, returned to the Coventry school system and is currently a student in a special education program, pending the outcome of that litigation.

School Committee (the governing body of the school system).

2. In view of the merger effectuated by the February 9th order, the motion for partial summary judgment is supererogative at best, and seems to serve no useful purpose.

3. The 1981 placement of the plaintiff's child in the Coventry school system is the subject of a case presently pending in the Rhode Island Supreme Court, Carroll v. Coventry School Committee, et al., No. 82–67 MP (1982), and, consequently, that placement per se is not in issue before this Court.

4. An IEP is defined by 20 U.S.C. § 1401(19) as a: "written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified

to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardian or such child, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs. (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved."

**1056**

As stipulated both federally, see 34 C.F.R. § 300.354 (1982), and by Rhode Island, see State Regulations, V, 3.4.3, Coventry sought to reevaluate Michael at some point during early 1983. Coventry, therefore, notified the plaintiff on January 3, 1983 that the defendants planned such an assessment of Michael's psychological, educational, linguistic, medical, sociological, and psychiatric condition. On or about January 11, 1983, the plaintiff's attorney notified the defendants that her client was revoking consent for such an assessment, or in the alternative, that her client refused to consent thereto. The defendants insisted upon their right and obligation to reevaluate Michael, and informed the plaintiff that, under the law as the defendants perceived it, parental consent was neither necessary nor material. The instant litigation ensued.

## II.

An abbreviated overview of the legal design in place as a vehicle to fulfill governmental responsibility for educating handicapped youth is appropriate at this juncture. Under the Act,[5] the public school system must provide a free and appropriate education to all handicapped children. See, e.g., Kruelle v. New Castle County School District, 642 F.2d 687, 690 (3rd Cir.1981); Colin K. v. Schmidt, 536 F.Supp. 1375, 1377 n. 2 (D.R.I.1982). In implementing the Act, the regulations promulgated by the Office of Special Education of the Department of Education require that a handicapped child be evaluated as a precondition to placement. 34 C.F.R. § 300.531. Accord State Regulations, IV, 1.0. Such an evaluation is the gatepost to the development of an IEP for the child and subsequent assignment to an appropriate special education program. 34 C.F.R. §§ 300.530–43 (1982); see Springdale School District # 50 v. Grace, 656 F.2d 300, 303–04 (8th Cir.1981), vacated on other grounds, —— U.S. ——, 102 S.Ct. 3504, 73

L.Ed.2d 1380 (1982). Although the IEP must be reviewed no less frequently than annually, 20 U.S.C. § 1414(a)(5), the evaluation (which, as indicated above, forms the basis of the placement of the child) need only be repeated once every three years (unless the parents request an earlier evaluation or the school system determines that one is desirable). 34 C.F.R. § 300.534. Such a reevaluation requires an assessment of the child in the same areas which were originally monitored. State Regulations, V, 3.4.3. Coventry believes that it has reached this plateau in carrying out its obligations to Michael; and such belief has become the focal point of this litigation.

## III.

The plaintiff asseverates that the proposed assessment violates (i) the regulations promulgated pursuant to the Act and (ii) the rights both of the plaintiff and of her son to due process under the Fourteenth Amendment. The plaintiff argues that no authentic pre-placement evaluation ever took place; and that, a fortiori, the impending assessment is itself an original pre-placement evaluation. The plaintiff alleges, and the defendants concede, that a seminal evaluation requires, under the regulations, that consent be obtained as a condition precedent to implementation thereof by the school system without a hearing. 34 C.F.R. § 300.504(b)(1)(i). It is, of course, uncontroverted here that the plaintiff has refused to consent to the assessment which Coventry is presently attempting to conduct. Thus, the plaintiff concludes that the defendants are debarred from going forward with the assessment procedures in the absence of all of the procedural formalities which attach to original pre-placement evaluations under the law and the regulations.

As a part of this argument, the plaintiff seemingly interprets the regulations as requiring a bona fide reevaluation to be performed under the aegis of the same team of

**5.** The Rhode Island statute providing for the education of handicapped individuals operates in conjunction with the federal scheme. See Smith v. Cumberland Sch. Comm., 415 A.2d 168, 171–72 (R.I.1980). Similarly, the state regulations are based upon the federal regula-

tions. See id. at 172. Except when differences exist and are relevant, all references in this opinion to law or regulations will be to the Act and to the comprehensive sub-strata of federal regulations.

evaluators (or the same sponsoring agency) as the original pre-placement evaluation. The plaintiff points out that, if this theory is accurate, it would prohibit the defendants from asserting that Coventry evaluated the plaintiff's child in January of 1981 because the defendants did no more than review the work of the Bradley team.

■ Plaintiff has yet a second arrow in her quiver. If the Court were to view the impending assessment as a reevaluation rather than as an original evaluation, there seems little question but that the regulations do not look to any parental consent.[6] Plaintiff, little daunted, argues that such a reevaluation without her consent would unconstitutionally abridge the rights both of the plaintiff and of her son to due process of law.[7] The plaintiff further contends that the failure to provide an opportunity to be heard (which she deems implicit in a regulatory framework permitting reevaluations without consent) would and does violate her protectible liberty interest in directing the upbringing of her child. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 213, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972);

*Pierce v. Society of Sisters,* 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925).

The defendants' position is more straightforward. They aver that Michael was indeed "evaluated" by the school system within the meaning of the law; and that the review of the Bradley findings was sufficient to this end.[8] Since the regulations do not require a school system to obtain parental consent before performing a reevaluation, 34 C.F.R. 300.504(b), (c)(1), the defendants view themselves as being free to proceed. The defendants lightly dismiss the plaintiff's Fourteenth Amendment claim as spurious, noting that the conduct of the reevaluation in and of itself will not affect her protectible interest in educating her child. Any changes in placement prescinding from the reevaluation can be contested by the plaintiff in statutorily mandated hearings. 20 U.S.C. § 1415(b); *see* 34 C.F.R. § 300.504. Thus, due process will in all respects have been accorded.

## IV.

■ The plaintiff's fusillade as to the necessity for her consent falls well wide of

---

**6.** State Regulation V, 3.4.3 defines a reevaluation as:

[A]n evaluation of the child shall be conducted every three years or more frequently if conditions warrant or if the child's parent or teacher requests an evaluation. The Multi-Disciplinary Team shall designate the individuals responsible for conducting the reevaluation which shall be conducted in accordance with 3.4.2.1—3.4.2.7 above. By reevaluation it is meant that the same areas of assessment related to the child's diagnosed disability which were originally examined in a child must again be assessed as they relate to the child's special education program. However, it is not mandated that the same specific test instruments be utilized during reevaluation.

Neither the federal regulation pertaining to consent, 30 C.F.R. § 500.504(b), nor its state counterpart, State Regulation V, 3.4.3.1, require parental consent for the school system to conduct a reevaluation. *See* note 11 *post.*

**7.** Neither party addresses the applicability of principles of *jus tertii* to the instant case. As this Court has stated in *Gordon v. Crouchley,* 554 F.Supp. 796 (D.R.I.1982), a litigant may assert the constitutional rights of a third party when (i) there is an integral relationship between the rights of the litigant and the rights of the third party; or when (ii) the third party is

unable to assert such rights. *Id.* at 798. The Court need not here decide whether there is a sufficiently integral relationship between the rights of the plaintiff and those of her minor child because it is apparent that Michael, on his own behoof, is unable to assert his constitutional rights. In any event, the plaintiff styles this action as one brought by her as Michael's "next best friend"; she recites in her verified complaint that she is Michael's "mother and legal guardian", Complaint, ¶ 1 (and this allegation is admitted in the defendants' answer); and the complaint repeatedly refers to Michael as "Plaintiff Child". *See, e.g.,* Complaint, ¶¶ 1, 4, 6, 11. In a very real sense, therefore, Michael is a real party in interest and his mother is prosecuting this action on his behalf in accord with Fed.R.Civ.P. 17(a), (c). *See* 6 C. Wright & A. Miller *Federal Practice and Procedure* § 1548, at 671, § 1570, at 773 (1971).

**8.** The record does not state explicitly the reasons underlying review of the Bradley assessments by the Coventry Special Education Team in January of 1981. It appears that this action was part of the statutorily mandated annual review of Michael's IEP (first developed in January of 1980). *See* Hearing on Placement of Michael C. at 9–10, Defendant's Exhibit A.

the mark. The assessment sought by the defendants can rationally be viewed only as a reevaluation. The plaintiff admits that her child was initially placed in a special education program in the Coventry school system in the fall of 1979. The plaintiff proffers no evidence to contest the defendant's assertion that the placement was uncontested or that an IEP for her child was drawn up during the 1979–80 school year. Nor does the plaintiff assert that the placement was performed in derogation of the Act or of the regulations. Under these circumstances the Court must hold that an original preplacement evaluation was performed since the defendants could not legally have placed Michael in such a special education program without having performed a complete evaluation. 34 C.F.R. § 300.531.[9]

■ Assuming *arguendo* that an evaluation had not taken place before Michael's initial placement, the Court finds in any event that the 1981 review by Coventry of the Bradley evaluations and the concomitant preparation of an IEP itself is action which qualified as an "evaluation" as that term is limned in the regulations. The regulations governing the evaluation process provide that a multidisciplinary team of school personnel designate the individuals responsible for conducting the evaluation. State Regulations, V, 3.5.1.1. The school multidisciplinary team then reviews the evaluation and proceeds to determine what, if any, type of special education is needed by the child. *Id.* at 3.5.2.3. Nowhere in the regulations [10] is there a requirement that

school personnel must themselves perform the evaluation. In view of these regulations, the Court is constrained to conclude that the January, 1981 review of the Bradley assessment complied with all federal and state laws and regulations. It, therefore, constituted an evaluation.

■ To sum up, these defendants have at least once, and in all likelihood twice, carried out (directly or by ratification) seminal pre-placement evaluations. They propose now only to reassess a currently-placed child. Under the totality of the circumstances, what the defendants envision is a procedure which has all the accoutrements of a reevaluation. There is a fair amount of truth in the old barnyard aphorism: if it walks like a duck, and it squawks like a duck, it must be a duck. So here: Michael is to be evaluated *again,* not *anew,* while still under the IEP and within the placement mandated by the earlier evaluation. The identity of the responsible educational unit (the Coventry school system) remains unchanged. The contemplated assessment is a reevaluation, pure and simple. And, a reevaluation does not, under either federal or state law, require parental consent nor falter in the face of parental non-acquiescence.[11]

## V.

■ Turning to plaintiff's assertion that a reevaluation without her consent violates her fundamental right to rear and educate her child in a manner she deems appropriate, the Court demurs. Although

---

**9.** A parent may contest the initial placement of a child by filing a written complaint with the superintendent of the school system. State Regulation IX, 6.1.1.1. The plaintiff has not offered any evidence to establish that she filed such a complaint with the superintendent anent Michael's initial placement in the Coventry school system in the fall of 1979. Thus, any right to contest such placement has been waived; and the propriety of such placement is, in any event, not before the Court.

**10.** References in the text at this point are principally to the State Regulations, as the federal regulations are, on this subject, significantly less particularized.

**11.** The Court's holding is buttressed by the opinion of the Office of Special Education which, in response to an unrelated inquiry from a school district, opined that consent need not be obtained from the parent insofar as reevaluation is concerned. Education for the Handicapped Law Report 211:272 (Oct. 2, 1981). An agency's interpretation of its own regulations is to be accorded great weight and may well be controlling, so long as such interpretation is reasonable. *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 11, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980); *Donovan v. Freeway Constr. Co.,* 551 F.Supp. 869, 878 (D.R.I.1982). That is palpably the case here.

this might represent a viable constitutional claim if Michael's placement was, without more, to be changed instantly at the time of reevaluation, the overtones of the instant case are far more muted. The plaintiff is presently contesting Michael's removal from Bradley and his ensuing placement in the Coventry school system in another forum. *See* note 3, *ante.* The reevaluation only provides a basis for recommending either maintenance or alteration of the placement of her child. Should such a modification be indicated, any actual change in placement would trigger the full panoply of due process rights articulated in § 1415 of the Act, as augmented by 34 C.F.R. §§ 300.500–.513, and State Regulations, IV. The Court has not found any case which accepts the plaintiff's novel proposition that a right to a hearing attaches when the notice of reevaluation is served. Both common sense and the accepted applications of fundamental constitutional safeguards [12] militate against the adoption of such *avant garde* notions of constitutional law.

The Court concludes, therefore, that the reevaluation does not, in and of itself, infringe on the plaintiff's parental liberty interest in rearing her child.

### VI.

■ Finally the plaintiff asserts that the reevaluation impermissibly intrudes upon rights of privacy—hers and her child's.

This reference may indeed correctly assay the reaches of the Constitution, *see generally Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), but its assertion in the case at bar is groundless. The plaintiff's grievance in this case has not been with the necessity for evaluation, but with the identity of the evaluators. She desires that her child receive a complete evaluation at Bradley. The Court finds it difficult to perceive how Bradley's evaluation would impinge less intrusively on Michael's right to privacy than an evaluation under the aegis of the Coventry school system. Given these circumstances, the Court cannot hold that the penumbras of the Constitution are, in this case, exposed to light.[13]

### VII.

The plaintiff has failed to prove a claim upon which relief can be granted; and the defendants are, in the Court's judgment, entitled to a verdict in their favor. Coventry has a right to reevaluate Michael notwithstanding plaintiff's intractability; and the plaintiff and her son, having sought and received the benefits of the Act, have the obligation to accede thereto.

Accordingly, the instant action may be, and hereby is, dismissed; the plaintiff's motion for partial summary judgment is denied; and judgment shall enter forthwith for the defendants for costs.

IT IS SO ORDERED.

---

12. The Due Process Clause of the Fourteenth Amendment does not always mandate a hearing for every possible deprivation of an individual's constitutional rights. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). For example, when the procedures and criteria for grading a bar applicant's examination comport with due process, there is no need for the bar examiner to conduct a hearing for individuals who desire to contest the grading scheme. *E.g., Tyler v. Vickery,* 517 F.2d 1089, 1104 (5th Cir.1975); *Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 477–78 (7th Cir.1974); *Singleton v. Louisiana State Bar Ass'n,* 413 F.Supp. 1092, 1100 (E.D.La.1976). Even so extreme an action as deprivation of property without a hearing has been upheld where exigent circumstances exist, so long as a fair and prompt post-deprivation hearing is furnished. *E.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 299–300, 101 S.Ct. 2352, 2371–72, 69

L.Ed.2d 1 (1981); *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 677–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974). An individual does not have a constitutional right to a hearing merely because, or whenever, he or she would like to have one. Since the plaintiff does not contest the fundamental fairness of the reevaluation process itself, the Court only need focus on whether or not she, as Michael's parent and guardian, will have an opportunity to be fairly heard prior to any change in the child's placement. In cases arising under the Act, the parent is afforded such an opportunity; and this Court believes that the provision of a hearing after the reevaluation (but prior to any change in status) fully meets applicable due process requirements.

13. The right of privacy of the plaintiff herself is not, in any event, implicated.